HAROLD BURKE *et al.*, Plaintiffs-Appellants, *v.* PITTWAY CORPORATION, Defendant-Appellee.

First District (3rd Division). No. 77-313

Opinion filed May 3, 1978.—Modified on denial of rehearing September 6, 1978.

Clemens Hufmann, Robert J. Rohrback, Timothy J. Vezeau, and Ronald B. Coolley, all of Chicago (Mason, Kolehmainen, Rathburn & Wyss, of counsel), for appellants.

J. William Hayton and James B. Moran, both of Bell, Boyd, Lloyd, Haddad & Burns, of Chicago (Fish & Richardson, of Boston, Massachusetts, of counsel), for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs brought this action in the circuit court of Cook County seeking to recover damages resulting from defendant Pittway's failure to perform an agreement entered into by the parties. The trial court granted Pittway's motion to dismiss the complaint on the ground that the case arose under Federal patent law and, therefore, was within the exclusive jurisdiction of the Federal court. Plaintiff appeals contending that the action is within the subject matter jurisdiction of the State court.

BRK Electronics Incorporated was an Illinois corporation engaged in the development, manufacture, and sale of smoke and fire detectors. Among the assets of BRK were various patents and pending patent applications. Plaintiffs were the owners of all issued and outstanding shares of stock, options, rights and warrants to acquire BRK shares.

On February 28, 1970, plaintiffs and Pittway entered into a contract entitled "Agreement For the Purchase And Sale Of The Stock And Notes Of BRK * * *." Pursuant to this agreement Pittway acquired all of the BRK outstanding notes, shares of stock, and stock rights. Pittway agreed to pay the holders of BRK notes the face amount of the notes plus accrued interest. Section 1.3 of the agreement provided that Pittway pay for BRK shares, rights, options and warrants, by paying a specific amount for each device covered by patents or pending patent applications owned by BRK at the time of acquisition. The agreed rate was $10 for each smoke and fire detector sold by Pittway. The rate of payment subsequently was decreased to $5 per device and then to $3.50 per device by subsequent

agreement. The maximum contingent purchase price remained $3,500,000 less BRK's liabilities as of February 28, 1970.

The contract required Pittway to report to plaintiffs on a quarterly basis its sales of smoke and fire detectors. Pittway was to pay such portions of the contingent purchase price as had accrued in the preceding calendar quarter. The reports and payments were to continue until the contingent purchase price had been paid or until the patents and applications were transferred to plaintiffs because of payment defaults.

Among the assets which Pittway acquired from BRK was U.S. Patent Application No. 709,415 (hereinafter the Original Patent Application). That application covered a smoke detector device utilizing two batteries. One of the batteries functioned as a monitor and sounded an alarm when the operative battery ran low. A circuit subsequently was devised which made it possible to eliminate the second battery. In its remarks pertaining to the request to include Claim 13 in the Original Patent Application, Pittway stated: "[C]laim 13 clearly and patentably sets forth the distinctions of the present invention's supervisory circuit over the cited references and affords applicants appropriate supplemental protection for their contribution to the art." The amendment was refused and no further action was taken concerning the Original Patent Application and its amendments. On July 20, 1971, the Original Patent Application matured into United States Letters Patent No. 3,594,751 (hereinafter the Original Patent).

The aggregate payments on account of the contingent purchase price did not amount to $500,000 for the three-year period following May 15, 1970. Pursuant to section 6.2 of the BRK contract plaintiffs requested Pittway to assign and transfer all patents and patent applications to the BRK Shareholders' Committee. On June 18, 1973, the transfer was effected through an assignment to the committee to hold all title to the patents for the benefit of plaintiffs. On July 13, 1973, the committee filed an application for reissue of the Original Patent which was allowed on July 20, 1976. According to plaintiffs, the Reissue Patent includes substantially all of the battery powered fire detectors currently manufactured, sold or used in the United States which utilize a supervisory circuit for monitoring the voltage output of the fire detector battery and signalling battery weakness on failure. Claim 13, however, was not includable in the Reissue Patent.

Plaintiffs filed a six-count complaint alleging that Pittway breached the BRK agreement and was liable for actual damages, exemplary damages, and reasonable attorney's fees and costs. Plaintiffs requested that the court order Pittway to pay plaintiffs for its future use of plaintiff's technology and inventions at the rates previously agreed to by the parties.

The issue is whether the cause of action pleaded in the complaint lies

within the exclusive subject matter jurisdiction of the Federal courts under 28 U.S.C. par. 1338(a) (1970). That statute provides:

"The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases."

■■■ A case arises under the patent laws "when the plaintiff in his opening pleading * * * sets up a right under the patent laws as ground for a recovery." (*Pratt v. Paris Gaslight & Coke Co.* (1897), 168 U.S. 255, 259, 42 L. Ed. 458, 460.) The general rule is that a suit by a patentee for royalties under an assignment by him or for any remedy sought pursuant to a contract permitting use of a patent is not a suit under the patent laws of the United States. (*Luckett v. Delpark, Inc.* (1926), 270 U.S. 496, 70 L. Ed. 703, 46 S. Ct. 397; *Wilson v. Sandford* (1850), 51 U.S. 99, 13 L. Ed. 344.) In *American Well Works Co. v. Layne & Bowler Co.* (1916), 241 U.S. 257, 260, 60 L. Ed. 987, 989, 36 S. Ct. 585, the court set down the rule governing cases when State jurisdiction is challenged on the basis of 28 U.S.C. 1338 (1970): "A suit arises under the law that creates the cause of action." In *T. B. Harms Co. v. Eliscu* (2d Cir. 1964), 339 F.2d 823, 826, the court discussed the meaning of the "arising under" language of the Federal statute and adhered to the principle enunciated in *American Well Works*:

"[T]he federal grant of a patent or copyright has not been thought to infuse with any national interest a dispute as to ownership or contractual enforcement turning on the facts or on ordinary principles of contract law. Indeed, the case for an unexpansive reading of the provision conferring exclusive jurisdiction with respect to patents and copyrights has been especially strong since expansion would entail depriving state courts of any jurisdiction over matters having so little federal significance."

■■ In their complaint plaintiffs allege that upon execution of the BRK agreement, Pittway undertook certain obligations with respect to the pending patent applications. Count I charged Pittway with breach of section 6.4 of the BRK agreement which provides:

"Until the contingent purchase price shall have been paid in full, or the patents and patent applications listed on Exhibit E shall have been transferred for the benefit of the Shareholders and Rights Holders as provided in section 6.2, Purchaser shall maintain in full force and effect the patents and patents issuing on the applications listed on Exhibit E, and shall make reasonable businesslike efforts to prosecute all of the pending patent applications listed on Exhibit E, and to defend any attack made on the validity or scope of said

patents and patent applications; provided, however, that the Purchaser may elect to discontinue such efforts if it shall determine in good faith that further action is unduly burdensome and shall give to the Shareholders and Rights Holders such timely notice of such determination as will permit them, at their expense, to continue or arrange for the continuation of such efforts."

Plaintiffs charge that Pittway failed to make reasonable businesslike efforts to secure and protect the patent applications filed by BRK and pending at the time of acquisition. Plaintiffs allege that reasonable businesslike efforts to prosecute the Original Patent Application would have included further prosecution of Claim 13 by either filing a continuation application or endeavoring to obtain allowance of Claim 13 after initial denial by the patent office. In count II, plaintiffs allege that Pittway breached its duty under the agreement when it failed to provide plaintiffs with timely notice of Pittway's decision to discontinue efforts to prosecute the Original Patent Application and Claim 13.

Both counts are based upon Pittway's alleged breach of duties specifically set out in the agreement between the parties. The agreement provided that plaintiffs would receive certain sums for devices manufactured under patents and patent applications transferred to Pittway. The sums were to be paid to plaintiffs until or unless the patent application covering such device was held invalid by a competent tribunal, including the patent office. The complaint does not allege the validity of the Original Patent Application and Claim 13, but rather charges Pittway with improper conduct in regard to duties assumed concerning that application and claim.

Pittway contends that the complaint alleges the patentability of Claim 13 in each count. It points specifically to paragraph 24 of count I which paragraph is incorporated by reference into the five subsequent counts. Paragraph 24 recites as follows:

"As set forth at pages 8 and 9 of an Amendment filed by Defendant in the Original Patent Application on or about October 28, 1970, claim 13 clearly and patentably set forth the distinctions of the inventive supervisory circuit disclosed in the Original Patent Application over the cited references and would have afforded applicants (and thus plaintiffs) appropriate and necessary protection for their contribution to the art."

Pittway points to the words "clearly and patentably" in paragraph 24 and argues that such requires plaintiffs to prove the patentability of Claim 13 in order to recover their alleged damages. Pittway thereby ignores the introductory wording of that paragraph which states, "As set forth at pages 8 and 9 of an Amendment filed by Defendant in the Original Patent Application on or about October 28, 1970 * * *." It is apparent that

paragraph 24 merely states precisely what Pittway stated in its remarks accompanying the amendments filed to include Claim 13 in the Original Patent Application. Plaintiffs have charged Pittway with breach of its contractual duty to fully prosecute all patent applications. In paragraph 24 plaintiffs allege that at one time Pittway believed Claim 13 to be patentable. Such evidence, if proved, would support plaintiffs' claim that Pittway's later abandonment of Claim 13 was a breach of its duty to make reasonable businesslike efforts to prosecute the patent applications transferred under the agreement. Paragraph 24, therefore, does not necessitate proof of the patentability of Claim 13.

Pittway also urges that paragraph 35 of count I, also incorporated into count II, requires proof of the patentability of Claim 13. Again, Pittway has ignored those words which fail to support its position. Paragraph 35 alleges some types of activities which would have constituted reasonable businesslike efforts on the part of Pittway. Plaintiffs allege that in failing to exert such efforts Pittway breached its contractual duty to fully prosecute the Original Patent Application. The requirement that Pittway properly prosecute patent applications is not based upon the patentability of the inventions covered by the applications.

Pittway maintains that plaintiffs were neither entitled to Claim 13 nor precluded from obtaining it by Pittway's failure to notify them of its withdrawal of that claim unless Claim 13 was patentable. This argument fails to take into account the duty assumed by Pittway and alleged in count II, to notify plaintiffs of the cessation of prosecution of patent applications. Section 6.4 of the agreement is devoid of any requirement that notice be given only if the device covered is patentable. Plaintiffs have properly alleged that Pittway was under a duty to notify them of the discontinuation of prosecuting Claim 13. We believe that to be a cause of action not arising under the patent laws.

Count III alleges that Pittway breached the BRK agreement when it failed to pay plaintiffs all the money due and owing them pursuant to the agreement and addenda thereto. Plaintiffs charge that in computing the amounts owed them, Pittway failed to include sums due for devices manufactured under the Original Patent Application and Claim 13. This count involves an interpretation of the payments obligation under the agreement and a factual determination as to whether Pittway reported and paid in accordance with the contract. Since the payments under the contract amount to royalty payments, a cause of action is stated under State law. *Luckett v. Delpark, Inc.* (1926), 270 U.S. 496, 70 L. Ed. 703, 46 S. Ct. 397.

Pittway asserts that because Claim 13 was never entered by the patent office, no royalties can be owed under the agreement in regard to devices which would be covered by that claim. This argument is premised upon

Pittway's belief that the patentability of Claim 13 must be shown before plaintiffs can prove any damages. Section 6.4 of the agreement merely requires reasonable businesslike efforts to prosecute patent applications and is devoid of patentability requirements. Section 1.3(b) of the agreement requires payment for each device manufactured under a pending patent application. Therefore, under the terms of the agreement, patentability is not a prerequisite to payment of the contingent purchase price.

In count IV, plaintiffs allege that Pittway assumed the position of a fiduciary when it agreed to secure full and adequate protection for the device covered by the Original Patent Application. Plaintiffs charge that Pittway's breach of its fiduciary duty was wilful and wanton, thus warranting actual and exemplary damages. The count constitutes an allegation of breach of contractual duties assumed by Pittway; it charges Pittway with using its power improperly to decrease or eliminate its financial liabilities to plaintiffs. It states a cause of action under State law.

Pittway asserts that its obligation to prosecute the Original Patent Application was limited to the prosecution of claims which are allowable. That Claim 13, or other claims related to the Original Patent Application, would not be allowed is a defense raised by Pittway and not a prerequisite to proof of the cause of action alleged by plaintiffs. (See *Lear, Inc. v. Adkins* (1969), 395 U.S. 653, 23 L. Ed. 2d 610, 89 S. Ct. 1902.) Pittway assumed the duty of exerting reasonable businesslike efforts to prosecute the patent pending applications. Under the contract, the determination of patentability was vested in a competent tribunal, including the patent office. It was not a requirement to be satisfied prior to Pittway's fulfillment of its duties concerning prosecution of applications and notification of the discontinuance of such prosecution.

Count V alleges that Pittway wilfully refrained from prosecuting Claim 13 and other claims broader in scope than those contained in the Original Patent Application. Plaintiffs charge that Pittway took advantage of technology owned by BRK and converted into its own property those rights it was under a duty to protect. Plaintiffs allege that Pittway sought patent coverage in applications filed on its own behalf. The damages sought are those which accrued by reason of Pittway's alleged failure to seek protection for devices manufactured through BRK technological developments and which were the result of the misappropriation of valuable property rights. Plaintiffs allege that Pittway's conduct in relation to such devices constituted a breach of its duties under the BRK agreement. We agree with the district court which ruled that because plaintiffs are precluded from suing under the patent laws for infringement of an invention that was never patented, their remedy against Pittway

must lie in State court. (*Pittway Corp. v. BRK Shareholders Committee* (N.D. Ill. 1978), 444 F. Supp. 1210.) The district court held that under those circumstances, Pittway could not sue under the patent laws for a declaratory judgment that it had not infringed those claims never embodied in the Original or Reissue Patents.

In count VI plaintiffs allege that Pittway failed to pay them their fair share of the commercial success of devices sold subsequent to February 28, 1970. Plaintiffs claim that Pittway wilfully appropriated the technology developed by BRK for its own purposes without paying plaintiffs the sums as agreed. This count simply states a cause of action in unjust enrichment. Plaintiffs have not charged a violation of Federal law. They seek only to obtain the monies allegedly due them by reason of their grant of the use of BRK technology to manufacture smoke detection devices.

Pittway also maintains that paragraph 33 charges it with liability for infringement of the Reissue Patent by third parties. In *Milprint, Inc. v. Curwood, Inc.* (7th Cir. 1977), 562 F.2d 418, the court adhered to the principle of *American Well Works*, holding that an election by the licensor to stand on the license agreement and to sue for contract remedies is an action arising under State law. The allegations of paragraph 33 only raise patent related matter which is insufficient to bring the case within the "arising under" language of the Federal patent statute. *American Well Works Co. v. Layne Bowler Co.* (1916), 241 U.S. 257, 6 L. Ed. 987, 36 S. Ct. 585.

Pittway relies upon the cases of *Forster v. Brown Hoisting Machinery Co.* (1914), 266 Ill. 287, 107 N.E. 588, and *Chapman Performance Products, Inc. v. Producers Sales, Inc.* (1973), 16 Ill. App. 3d 459, 306 N.E.2d 615, to support its contention that Illinois courts do not have jurisdiction of this case. In *Forster*, plaintiff alleged that defendant had violated an agreement which provided that if defendant obtained letters patent on certain inventions he would assign them to plaintiff. The dispute centered around which party had been the author of an invention for which defendant had obtained a patent without assigning it to plaintiff. The supreme court upheld the trial court's dismissal of the suit because a determination of the conflicting claims necessarily required a determination of the patent's validity. The court pointed out, however:

"Suits to recover royalties for the use of patents, suits for the specific performance of contracts for their use and suits on contracts governing the rights of the parties in the use of a patented, invention have been held not to be suits under the patent laws, and in such actions State courts have jurisdiction." (266 Ill. 287, 296.)

As we have discussed, the present case does not involve a determination

as to the validity of the Original Patent Application, Claim 13, or other related claims. Therefore, the assertion of State court jurisdiction here is not contrary to the holding of *Forster*.

■■ In *Chapman* the complaint alleged that defendants had breached an assignment by manufacturing and marketing a product covered by the patent previously assigned to plaintiffs. Plaintiffs' claim of unfair competition included a request to enjoin defendants from further using and violating rights granted to the plaintiff corporation by the patent at issue. This court held that the main purpose of the action was to establish a patent and to enjoin its infringement. For that reason, it held that the action arose under 28 U.S.C. §1338 (1970) and, therefore, was filed improperly in State court. The present case is distinguishable because here plaintiffs seek damages pursuant to an agreement to pay royalties for patents and patent pending applications. The validity of the patents need not be determined to enable plaintiffs to recover monies due. The entire cause of action is based upon Pittway's alleged failure to comply with certain provisions of the contract regarding prosecution of patent applications, notice, and payment of royalties. Such a suit is properly within the jurisdiction of the State courts.

For the reasons stated, the judgment of the circuit court of Cook County dismissing the complaint is reversed, and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Judgment reversed and remanded.

JIGANTI, P. J., and McGILLICUDDY, J., concur.