**James T. CHAVEZ, Plaintiff,**

**v.**

**Patricia KINCAID and Santa Fe Kiva Fireplace Manufacturing, Inc., a New Mexico corporation, f/k/a Santa Fe Kiva Fireplace Co., Defendants.**

No. Civ. 97–1302 SC/DJS.

United States District Court,
D. New Mexico.

May 14, 1998.

Alberto A. León, Alberto A. León, P.C., Albuquerque, NM, Howard R. Thomas, Thomas, Bauman & Dow, P.C., Albuquerque, NM, for Plaintiff.

Kenneth C. Downes, Kenneth C. Downes & Associates, Albuquerque, NM, Ray R. Regan, Law Office of Ray R. Regan, Corrales, NM, for Defendants.

### MEMORANDUM OPINION

CAMPOS, Senior District Judge.

THIS MATTER comes before the Court on Plaintiff's Motion to Remand and for Attorney's Fees and Costs, filed November 28, 1997 [Doc. No. 5]. The Court, having read the motions, the memoranda, and the state court records referenced in the memoranda, and being apprised of the applicable law, finds that the Plaintiff's motion is well taken. Upon examination of the record in this case, the Court concludes that the action was improvidently removed to this Court and should be remanded to the state court pursuant to 28 U.S.C. § 1447(c). The Court enters its rulings in accordance with the discussion set forth below.

## I. BACKGROUND

Plaintiff filed his Complaint on May 31, 1996, in the Second Judicial District Court of the State of New Mexico. The lawsuit arises out of a business relationship between Plaintiff and Defendants, involving the design, development, and manufacture of at least one fireplace and parts thereof. Plaintiff seeks damages for breach of contract, collection of debt and money due, promissory estoppel, unjust enrichment, fraud/misrepresentation, conversion, and *prima facie* tort. On October 3, 1997, Defendants filed a Notice of Removal, alleging that this Court has exclusive original jurisdiction pursuant to 28 U.S.C. § 1441(a) (removal) and 28 U.S.C. § 1338(a) (patent law).

## II. REMOVAL AND REMAND

### A. Legal Standard

The removal statute provides:

[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

 Federal courts are of limited jurisdiction. *See Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). There is a presumption that a case lies outside this limited jurisdiction. *See id.; see also Rodriguez v. Union Oil Co. of California*, 121 F.Supp. 824, 828 (S.D.Cal.1954). The right to remove a case that was originally in state court to federal court is purely statutory, not constitutional. *See McCurtain County Production Corp. v. Cowett*, 482 F.Supp. 809, 812 (E.D.Okla.1978); *Abernathy v. Consolidated Cab Co.*, 169 F.Supp. 831, 833 (D.Kan.1959). Removal statutes are to be construed strictly. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *McCurtain*, 482 F.Supp. at 812. Any doubt as to the propriety of removal is to be resolved in favor of remand. *See Fajen v. Foundation Reserve Insurance Co.*, 683 F.2d 331, 333 (10th Cir. 1982); *Radio Shack Franchise Department v. Williams*, 804 F.Supp. 151, 153 (D.Kan. 1992); *see also Lorraine Motors, Inc. v. Aetna Casualty and Surety Co.*, 166 F.Supp. 319, 323 (E.D.N.Y.1958) (Because "want of federal jurisdiction would make futile the litigation of any of the issues in this court, every doubt should be resolved in favor of remand." (internal quotes omitted) (quoting *Rodriguez*, 121 F.Supp. at 828)). Defendant, as the party asserting jurisdiction, has the burden of proving all jurisdictional facts and of establishing a right to removal. *See Her Majesty the Queen in Right of Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir.1989) (*citing Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97–98, 42 S.Ct. 35, 66 L.Ed. 144 (1921)); *P.P. Farmers' Ele-*

vator Co. v. Farmers Elevator Mutual Insurance Co., 395 F.2d 546, 548 (7th Cir.1968); see also Kokkonen, 511 U.S. at 377, 114 S.Ct. 1673; Henderson v. Holmes 920 F.Supp. 1184, 1186 (D.Kan.1996).

## B. Discussion

Plaintiff contends that this lawsuit should be remanded to state court for three alternative reasons: (1) untimeliness; (2) waiver; and (3) lack of subject matter jurisdiction. The Court agrees that Defendants' removal was untimely and that, even if removal was timely, Defendants, by their acts in state court, waived there removal right. The Court does not reach the jurisdiction question, but leaves that for the state court to decide.[1]

### 1. Timeliness

Timeliness of removal is a matter of statute and of perspective. Under 28 U.S.C. § 1446(b):

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of the amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable....

28 U.S.C. § 1446(b). The thirty-day time limitation is mandatory and strictly construed. See McCain v. Cahoj, 794 F.Supp. 1061, 1062 (D.Kan.1992). The question of whether, and when, the thirty-day period has run is easily and "objectively" computated once "day one" in known. However, the question of when the thirty-day period begins, i.e., what date is "day one," can be more difficult to answer. To determine at what point in time a defendant should have been able to ascertain the asserted removability of the case, a court must look at the facts of the particular case. See Zatarain v. WDSU–TV, Inc., No. 93–526, 1993 WL 98681 at *2 (E.D.La. March 26, 1993) (unpublished minute entry) ("The facts disclosed must be sufficient to put [the] defendant on notice that the case falls within federal jurisdiction and the removal period runs from the time [the] defendant first acquires such notice.").

■ Defendants contend that Plaintiff's Complaint, filed May 31, 1996, gave no indication that this lawsuit was removable, and

---

1. The Court shah not reach the merits of the third argument because the first two arguments reveal two procedural defects in Defendants' Notice of Removal, resulting in remand of this case. The Court will state, briefly, however, that had it reached the merits of the federal jurisdiction issue, giving due consideration to the caselaw and to the well pleaded complaint rule, it would have found in favor of Plaintiff. See Ausherman v. Stump, 643 F.2d 715, 718 (10th Cir.1981); Heath v. Zenkich, 107 Ill.App.3d 207, 63 Ill.Dec. 26, 437 N.E.2d 675, 678–79 (1982); Van Products Co. v. General Welding and Fabricating Co., 419 Pa. 248, 213 A.2d 769, 773 (1965); Aetna–Standard Engineering Co. v. Rowland, 343 Pa.Super. 64, 493 A.2d 1375, 1377 (1985); see also Luckett v. Delpark, Inc., 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703 (1926); Excelsior Wooden Pipe Co. v. Pacific Bridge Co., 185 U.S. 282, 285, 22 S.Ct. 681, 46 L.Ed. 910 (1902); Beghin–Say International, Inc. v. Ole–Bendt Rasmussen, 733 F.2d 1568, 1570–71 (Fed.Cir.1987); In re Oximetrix, Inc., 748 F.2d 637, 641, 642 (Fed.Cir.1984); Laning v. National Ribbon & Carbon Paper Manufacturing Co., 125 F.2d 565, 566–67 (7th Cir. 1942); Tate v. Scanlan International, Inc., 403 N.W.2d 666 (Minn.Ct.App.1987); MGA, Inc. v. LaSalle Machine Tool, Inc., 148 Mich.App. 350, 384 N.W.2d 159 (1986). But see Miracle Boot Puller Co. Ltd. v. Plastray Corp., 84 Mich.App. 118, 269 N.W.2d 496 (1978)

In addition, the Court does not agree with Defendants that conversion of intellectual property is an inanity. See Miracle Boot Puller Co. Ltd. v. Plastray Corp., 57 Mich.App. 443, 225 N.W.2d 800 (1975); see also Dowling v. United States, 473 U.S. 207, 231–32, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985) (Powell, J., dissenting, joined by Burger, C.J., and White, J.); Wolfe v. American Airlines, No. 94–5184, 64 F.3d 670, 1995 WL 495221 (10th Cir. Aug. 21, 1995) (unpublished disposition). However, whether conversion of intellectual property is a claim upon which relief can be granted under New Mexico law is a question for the state court to resolve.

that the removable nature of the lawsuit was not revealed until September 8, 1997, in ¶ 15 of Plaintiff's response [hereinafter Plaintiff's Protective Order Response] to Defendant's state court Motion for Protective Order. Defendants argue that because they filed their Notice of Removal within thirty days of Plaintiff's Protective Order Response such removal was timely under § 1446(b).

In ¶ 15 of Plaintiff's Protective Order Response, Plaintiff stated: "Plaintiff has asserted and continues to assert claims over Defendants' intellectual property rights which arose after the inception of the parties' relationship including, but not limited to, patents, improvements, derivative products, continuations of prior patent registrations, reissued patents or trade secrets." Pl. Resp. Mot. Defs. Mot. Protective Order at ¶ 15.[2] Defendants allege that a claim for relief for ownership of interests in United States letters patent issued to Defendant Kincaid, or for an interest in any patent issued to Defendant Kincaid or in any as yet unfiled patent application of Defendant Kincaid, is set forth in ¶ 15 of Plaintiff's Protective Order Response. It was not until receipt of ¶ 15, Defendants contend, that they were on notice Plaintiff has an interest in Defendants' patents, and, thus, that this case was removable under 28 U.S.C. § 1338(a).[3] Plaintiff disagrees and argues that Defendants were on notice long before September 8, 1997 that his intellectual property claim concerned Defendant Kincaid's patent(s).[4] Plaintiff points to both pleadings and attorney correspondence to support his prior notice contention.

The basis for Defendants' removal is federal question jurisdiction—that Plaintiff is alleging ownership or co-inventorship rights which arise under the patent laws of the United States. Whether Plaintiff's lawsuit does indeed arise under federal patent law is a question of subject matter jurisdiction into which the Court will not delve. Rather, whether the Plaintiff's Protective Order Response was the first indication that Plaintiff was alleging ownership or co-inventorship interests or claims which concern Defendants' patents or other types of "intellectual property" is the question which this Court must answer. *See Golden Apple Management Co., Inc. v. GEAC Computers, Inc.,* 990 F.Supp. 1364, 1366 (M.D.Ala.1998) ("The issue in this action [is] whether Geac can be charged with knowledge of removability of the action prior to receipt of plaintiff's response to the request for admission.")

The Court realizes hindsight is twenty-twenty. The Court also does not want to encourage the filing of unripe or premature removals, or require defendants to " 'guess' as to an action['s] removability." *Richstone v. Chubb Colonial Life Insurance,* 988 F.Supp. 401, 403 (S.D.N.Y.1997) (internal quotations omitted) (quoting *Rowe v. Marder,* 750 F.Supp. 718, 721 (W.D.Pa.1990) (citations omitted in *Richstone*), *aff'd,* 935 F.2d 1282 (3d Cir.1991)). By September 8, 1997, however, notice in this case was so ripe that its fragance should have been redolent.

One does not need to be a patent lawyer to see that from the beginning Plaintiff's lawsuit involved co-inventorship claims or interests over the product resulting from Plaintiff and Defendants' business relationship. In fact, it is the Defendants who kept defensively asserting Defendant Kincaid's patent rights. The case as it unfolded provided further notice. The necessary facts to sup-

**2.** The portion of ¶ 15 of Plaintiff's Protective Order Response quoted in the text is only the section of ¶ 15 quoted by Defendants in their Notice of Removal. The remainder of ¶ 15 provides: "Plaintiff's claims extend to any intellectual property which Defendants claim they own and which incorporates any aspects of Plaintiff's Intellectual Property. Plaintiff's interests and claims are irrespective of the form of Defendants' intellectual property or how any rights claimed by Defendants may have been secured." Pl. Resp. Mot. Defs. Mot. Protective Order at ¶ 15.

**3.** Section 1338(a) provides:

The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.
28 U.S.C. § 1338(a).

**4.** Plaintiff also contends that merely because his intellectual property claim(s) may involve Defendant Kincaid's patent(s) does not necessarily mean that the Court has exclusive jurisdiction over the claim under 28 U.S.C. § 1338(a).

port Defendants' removal petition were easily ascertainable before September 8, 1997 and ¶ 15 of Plaintiff's Protective Order Response. Paragraph 15 does no more than to reiterate what the parties already understood Plaintiff was claiming.

The first indication that this case concerned "ownership or co-inventorship," ringing patent law bells, is the basis of the Complaint, *i.e.*, the business relationship between Plaintiff and Defendants, during which Plaintiff worked with Defendant Kincaid in developing a product or products. According to the Complaint, Plaintiff not only cut and fabricated parts, but also worked on the development and design of at least one product, including perfecting a burner. For a majority of the relationship, Plaintiff used his own materials and equipment, his own shop, his own labor, and the labor of his employee.

The next indication that Plaintiff was claiming ownership or co-inventorship interests is the claims of relief listed in the Complaint. Count Three (Promissory Estoppel) alleges that Defendant Kincaid promised Plaintiff that he would receive payments for his contribution to the development and design of the product(s). Count Four (Unjust Enrichment) alleges that Defendants have received the benefits of not only Plaintiff's labor, but of the development provided by Plaintiff. Count Six (Conversion) alleges that Plaintiff contributed design ideas, developments, and concepts—contributions which Plaintiff explicitly labels "Chavez's Intellectual Property." Plaintiff also contends in Count Six that Defendants have used and possessed his "Intellectual Property" without Plaintiff' permission and in defiance of Plaintiff's rights as owner of his Intellectual Property. Plaintiff further alleges in Count Six that Defendant's unauthorized possession and use of Plaintiff's Intellectual Property exclusively benefits Defendants and precludes Plaintiff from exercising his rights over his property.

Defendants claim, however, that the Complaint did not provide notice of removability

because it is vague, failing to define "Intellectual Property," for example. But, it is clear from the early, mostly pre-Complaint,[5] correspondence provided to the Court as exhibits that, with the possible exception of one letter, Defendant Kincaid and her counsel realized that Plaintiff was claiming ownership or co-inventorship interests, and that Defendant Kincaid's patent(s) might be at issue. On March 4, 1996, Plaintiff's attorney informed Defendants that Plaintiff may have a claim against them for misappropriation of intellectual property,[6] among other listed claims. In her March 8, 1996 letter to her first attorney, in response to a letter from Plaintiff's attorney, Defendant Kincaid requested that her attorney forward to Plaintiff's attorney a copy of a brochure indicating a patent date of the product involved. In a fax dated March 18, 1996, which appears to be a follow-up of an earlier conversation between the parties' attorneys, Plaintiff's attorney informed Defendants' first attorney: "As we discussed, your client's response [of March 4, 1996] which you transmitted to me only addresses her position on my client's claims concerning intellectual property. As I told you, we do not necessarily agree with her position on that issue. Your client's letter, however, is silent [as to Plaintiff's other claims]." Pl. Memo. Brief Pl. Mot. Remand and Atty's Fees and Costs, Exh. C. On May 1, 1996, in another pre-Complaint letter to Plaintiff's attorney, Defendants' second attorneys stated:

> Judging from the allegations contained in your March 4th letter, Mr. Chavez apparently led you to believe that he ... did all the design work, including the welding and fabrication which ultimately led to the development of the fireplace unit currently in production. You have since been supplied with information confirming that the fireplace unit was patented in 1989—well before Mr. Chavez's introduction to Ms. Kincaid. I assume that misappropriation of intellectual property is no longer an issue. If you have information pertaining to claims regarding intellectual properties

---

5. The Complaint was filed May 31, 1996.

6. Although the Defendants raise the issue, the Court will not analyze the difference between misappropriation of intellectual property and

conversion of intellectual property—either claim should have raised removal red flags given the context of this case.

other than the fireplace please let me know.

Pl. Memo. Brief Pl. Mot. Remand and Atty's Fees and Costs, Exh. D. All involved understood that Plaintiff's as yet unfiled "intellectual property" claims concerned to some extent Defendants' patent(s) or other intellectual property interests in the product(s) involved.

There was clear post-Complaint notice, as well. On January 9, 1997, in response to Defendants' Discovery Answers and Responses, Plaintiff explained: "We are entitled to the patent application and documentation of the prosecution history. As you know, the patent was issued after Mr. Chavez had performed work for you clients. We are entitled to show whether his work resulted in any amendments or improvements to, or if it had any effect on, the application's prosecution." Pl. Memo. Brief Pl. Mot. Remand and Atty's Fees and Costs, Exh. E. (Defendants' Response to Plaintiff's First Request for Production of Documents, ¶ 5, No. 9). As quoted by Plaintiff in his motion to remand, the Plaintiff's first discovery requests, served on October 18, 1996, also should have provided Defendants with additional knowledge of Plaintiff's ownership or co-inventorship claims.

Finally, the two motions filed in state court by Defendants' fourth and present set of counsel, patent attorneys, provide further evidence of Defendants' understanding of Plaintiff's intellectual property claim(s) as that stated in ¶ 15 of Plaintiff's Protective Order Response—and, thus, the removability of the lawsuit. One of the grounds for Defendants' state court Motion to Dismiss, filed September 4, 1998, was that the state court lacked subject matter jurisdiction under 28 U.S.C. § 1338(a). The Court notes, in fact, the similarity between Defendants' Memorandum in Support of Defendants' Motion to Dismiss and their Response to Plaintiff's Motion and Memorandum to Remand. In addition, in Defendants' state court Motion for Protective Order, Defendants stated that Defendant Kincaid "denies that she has converted any 'intellectual property rights' of [P]laintiff. Indeed, as Defendants have asserted in their Motion to Dismiss . . ., the

only person involved in this litigation having any authentic property rights is Ms. Kincaid." Defs. Mot. Protective Order, ¶ E; *see id.* at ¶ F.

Therefore, although Defendants' contend that the first unveiling of Plaintiff's ownership or co-inventorship interests claim, involving Defendant Kincaid's patents, was in ¶ 15 of Plaintiff's Protective Order Response, a review of the correspondence, pleadings, and context of the lawsuit demonstrates that ¶ 15 was merely a restatement of what was already obvious. As a result, ¶ 15 was not the trigger of the removal statute.

Having found that ¶ 15 was not the first point in time at which Defendants could have "intelligently ascertained," *Richstone v. Chubb Colonial Life Insurance*, 988 F.Supp. 401, 403 (S.D.N.Y.1997), the removability of this lawsuit, the question then is at what point was it first sufficiently ascertainable. The first evidence of this lawsuit's removability, as construed by Defendants, is the pre-Complaint correspondence. Defendants contend that correspondence is not "other paper" as the phrase is used in 28 U.S.C. § 1446(b). The Court disagrees. "Other paper" is a broad term, and includes any relevant information received by Defendants. *See Yarnevic v. Brink's, Inc.*, 102 F.3d 753, 755 (4th Cir.1996). It not what the document is that is relevant, but what the document says and whether it includes information from which Defendants should have ascertained that removability was possible. *See Golden Apple Management Co., Inc. v. GEAC Computers, Inc.*, 990 F.Supp. 1364, 1367 (M.D.Ala.1998); *Rowe v. Marder*, 750 F.Supp. 718, 720 (W.D.Pa.1990).

Notwithstanding the broad meaning of the term "other paper," under the plain language of § 1446(b), pre-Complaint documents do not constitute "other paper" because they were issued before the Complaint was filed. *See* 28 U.S.C. § 1446(b); *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164 (5th Cir.1992). However, the pre-Complaint documents in this lawsuit do provide a context for reading the Complaint—a context Defendants cannot now ignore.

If it had not been for the May 1, 1996 letter from Defendants' counsel, the Court

would have found that the thirty-day removal clock began ticking as of the date of the Defendants' receipt of Plaintiff's Complaint. However, the pre-Complaint, May 1, 1996 letter adds a drop of ambiguity to the contextual background of the Complaint and, thus, to the issue of whether there was sufficient existence of removable facts.[7] While the May 1, 1996 letter impresses the Court that Defendants' understood Plaintiff to be making a claim for ownership or co-inventorship, a claim which involved Defendant Kincaid's patent(s), the letter also indicates that Defendants' may have perceived that the ownership/intellectual property claim was a dead letter. Plaintiff's continued assertion of this claim in his Complaint should have reallerted Defendants' that the claim was alive and kicking. But, because the contextual background of the Complaint is slightly muddy, the Court finds that the Defendants' receipt of the Complaint did not start the § 1446(b) clock. The thirty days set forth in § 1446(b) were tolled until Defendants received sufficient notice of removability by receipt, in this case, of an "other paper." *See Akin v. Big Three Industries, Inc.,* 851 F.Supp. 819, 825 (E.D.Tex.1994); *see also Herrington v. J.R. Pounds, Inc.,* 874 F.Supp. 133, 137 (S.D.Miss. 1995) ("If somehow the plaintiff's complaint fails to reflect on its face a federal cause of action, defendant's removal clock starts to tick at the point when defendant is first put on notice that the case is removable.").

This "other paper" is Plaintiff's attorney's January 9, 1997 letter to Defendants' third set of attorneys, who are patent lawyers. Any doubt as to whether Plaintiff was alleging ownership or co-inventorship claims in the relevant product and the significance of De-

fendant Kincaid's patents is dispelled by this letter.[8] The Court finds that Defendants could have intelligently ascertained that Plaintiff was claiming an ownership or inventorship interest in Defendant Kincaid's "intellectual property," including her patents, no later than their receipt of Plaintiff's counsel January 9, 1997 letter. *See* 28 U.S.C. § 1446(b); *Patel v. Moore,* 968 F.Supp. 587, 588–89 (D.Kan.1997) (receipt rule); *Wickham v. Omark Industries, Inc.,* No. 92–2286, 1993 WL 393012 (D.Kan. Sept. 28, 1993) (unpublished opinion) (same).

The documents received by Defendants before September 8, 1997 sufficiently appraised Defendants of the grounds for removal. No magic language was needed. Because Defendants' statutory period was triggered no later than the date of Defendants' receipt of the January 9, 1997, a removal notice filed thirty days after the receipt of that letter, *i.e.,* after February 1997, would be untimely.[9] Defendants' removal notice was filed October 3, 1997; therefore, it was filed approximately seven months late.

The failure to file a timely notice of removal is a procedural defect requiring remand. *See First National Bank & Trust Co. v. Nicholas,* 768 F.Supp. 788, 790 (D.Kan.1991); *see also Zatarain v. WDSU–TV, Inc.,* No. Civ. A. 93–526, 1993 WL 98681 at *3 (E.D.La. March 26, 1993) (unpublished minute entry) (citing *London v. United States Fire Insurance Co.,* 531 F.2d 257 (5th Cir. 1976)). Defendants' failure to file a timely notice of removal means that they have waived their right to remove what they contend is a federal question claim. *See Zatarain,* 1993 WL 98681 at *3 (citing *Royal v. State Farm Fire and Casualty Co.,* 685 F.2d

---

7. Any response to this letter by Plaintiff was not provided to the Court.

8. Arguably, Plaintiff's first discovery requests, as quoted by Plaintiff, which were served on Defendants in October 1996, provided sufficient notice of removable facts. However, the January 9, 1997 letter more clearly, and without doubt, provided such notice.

9. The date the removal statute is triggered is the date that a defendant receives the notifying document, not the date the document is filed or mailed. *See* 28 U.S.C. § 1446(b); *Patel v. Moore,* 968 F.Supp. 587, 588–89 (D.Kan.1997) (receipt

rule); *Wickham v. Omark Industries, Inc.,* No. Civ. A. 92–2286, 1993 WL 393012 (D.Kan. Sept. 28, 1993) (unpublished opinion) (same). Because the Court does not know the date of Defendants' receipt of the January 9, 1998 letter, and because Defendants have not contended they did not receive the letter, the Court will assume that receipt occurred within a week of the date of the letter. In addition, because the receipt date is not precisely known, the end of the thirty-day removal period cannot be determined with exactness. The precise ending date of the removal period, however, is not at issue, given the extreme untimeliness of Defendants' Notice of Removal.

124 (5th Cir.1982); *Harris v. Edward Hyman Co.,* 664 F.2d 943 (5th Cir.1981)). If the state court finds that the federal courts have exclusive jurisdiction over Plaintiff's ownership or inventorship claims because such claims "arise under" federal patent law, the state court may take whatever action it deems appropriate. *See Newtop v. United States,* No. 94–4121, 1995 WL 33019 (N.D.Cal. Jan. 24, 1995) (unpublished order).

*2. Waiver*

■ Not only was Defendants' Notice of Removal untimely, but by proceeding in state court after they were aware of the possible federal question issues, Defendants waived their right to remove. *See Richstone v. Chubb Colonial Life Insurance,* 988 F.Supp. 401, 403 (S.D.N.Y.1997) ("A decision to remand based on whether a case has proceeded too far at the state level is left to the sound discretion of the district judge."); *Hill v. Citicorp,* 804 F.Supp. 514, 516 (S.D.N.Y. 1992). Waiver occurs when a defendant "manifest[s] an intent to litigate in the state court...." *Heafitz v. Interfirst Bank of Dallas,* 711 F.Supp. 92, 97 (S.D.N.Y.1989); *see Scholz v. RDV Sports, Inc.,* 821 F.Supp. 1469, 1470 (M.D.Fla.1993) ("A defendant waives its right to remove by proceeding to defend the action in state court or otherwise invoking the process of the state court."); *cf. Todd v. DSN Dealer Service Network, Inc.,* 861 F.Supp. 1531, 1536 (D.Kan.1994) (waiver of right to remand); *Harris,* 664 F.2d at 944–46 (same). However, an act to maintain the state court *status quo* does not constitute waiver. *See Fain v. Biltmore Securities, Inc.,* 166 F.R.D. 39, 41 (M.D.Ala.1996); *see also Scholz,* 821 F.Supp. at 1470.

Defendants' serving Plaintiff with discovery requests on January 28, 1997, filing a motion to dismiss on September 4, 1997, and scheduling a state court hearing on the motion manifests an intent to proceed in state court. The Defendants' Motion to Dismiss submitted the merits of the lawsuit to the jurisdiction of the state court, and was not an action that merely maintained the state court

*status quo.* A twenty-four page supporting brief was filed by Defendants and a hearing was scheduled. Defendants' actions "manifested a clear and unequivocal intent to proceed on the merits" of the case in state court. *See Fain,* 166 F.R.D. at 42. The Motion to Dismiss and discovery requests were filed after Defendants should have ascertained their removal right. *See Fain,* 166 F.R.D. at 40 ("[T]he right to remove a case to federal court may be waived by acts taken in the state court, subsequent to the creation of the right to remove, that indicate the defendant has invoked the jurisdiction of the state court."); *see also Akin v. Big Three Industries, Inc.,* 851 F.Supp. 819, 825 n. 5 (E.D.Tex.1994) (right must be first accrued before it can be waived); *Richstone,* 988 F.Supp. at 403. As a result, the removal of this case was improper.

Therefore, because Defendants waived their removal right and, in the alternative, because removal was untimely, the Court shall remand this case to state court.

**III. ATTORNEY'S FEES AND COSTS**

■ Plaintiff has requested that the Court award him, pursuant to 28 U.S.C. § 1447(c),[10] attorney's fees and costs incurred by him as a result of Defendants' improper removal of this action. Whether to award attorney's fees and costs under § 1447(c) when a case is remanded to state court is within the sound discretion of the district court. *See Suder v. Blue Circle, Inc.,* 116 F.3d 1351, 1353 (10th Cir.1997); *see also Daleske v. Fairfield Communities, Inc.,* 17 F.3d 321, 323 (10th Cir. 1994). Likewise, the amount of any such award is within the Court's discretion. *See Shrader v. Legg Mason Wood Walker, Inc.,* 880 F.Supp. 366, 371 (E.D.Pa.1995); *see also Morgan Guaranty Trust Co. v. Republic of Palau,* 971 F.2d 917, 924 (2d Cir.1992) (district courts have a great deal of discretion and flexibility in fashioning an award under § 1447(c)); *Moore v. Kaiser Foundation Hospitals, Inc.,* 765 F.Supp. 1464, 1466 (N.D.Cal.1991) (A district court, in exercising its discretion, "may award none, some, or all

---

**10.** Section 1447(c) provides in relevant part: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).

of the fees incurred by the remanding party."). A finding that the removal was done in bad faith is not a prerequisite to an award of attorney's fees and costs under § 1447(c). *See Excell, Inc. v. Sterling Boiler & Mechanical, Inc.,* 106 F.3d 318, 322 (10th Cir.1997); *Daleske,* 17 F.3d at 324. "[T]he key factor is the propriety of [the] defendant's removal." *Excell,* 106 F.3d at 322 (citing *Daleske,* 17 F.3d at 324); *see also Suder,* 116 F.3d 1351, 1353.

 If the Court had based its decision on the subject matter jurisdiction issue of whether a state court could hear this lawsuit or whether the federal courts have exclusive jurisdiction under 28 U.S.C. § 1338(a), this Court would not have awarded attorney fees. While timely, nonwaived removal under § 1338(a) may or may not have been correct, it would not have been "improvident," given the complexity of the issue. The issues decided by the Court, however, concern not conflicting interpretations of the relevant law or the definition of "arising under" in the context of 28 U.S.C. § 1338(a), but untimeliness and waiver. The removability of this action, as framed by Defendants, was patent long before September 8, 1997. Because Defendants' Notice of Removal was improvident, the Court will exercise its discretion and, pursuant to 28 U.S.C. § 1447(c), award Plaintiff his just costs and actual expenses, including attorney's fees, incurred as a result of the removal of this case by Defendants.

Defendants have requested in Defendant's Response to Plaintiff's Motion and Memorandum to Remand that the Court award them attorney's fees and costs, pursuant to 28 U.S.C. § 1447(c) and the general discretionary powers of the Court. However, given that the Court has found their removal of this lawsuit was improper, the Court shall deny their request.

**THEREFORE, IT IS ORDERED** that Plaintiff's Motion for Remand and for Attorney's Fees and Costs [Doc. No. 5], filed November 28, 1997, should be, and hereby is, GRANTED. Pursuant to 28 U.S.C. § 1447(c), Defendants shall pay the just costs and any actual expenses, including attorney fees, incurred by Plaintiff as a result of this removal. Plaintiff, in accordance with the local rules of this Court, will submit an itemized accounting, supporting brief, and evidence (affidavits and time records) within fifteen days of the entry of this Opinion. Defendants will have fifteen days to contest any costs or fees claimed by Plaintiff and Plaintiff will have five days to reply.

**IT IS FURTHER ORDERED** that Defendants' request for attorney's fees and costs in Defendants' Response to Plaintiff's Motion and Memorandum to Remand Filed by Plaintiff On or About October 31, 1997 [Doc. No. 7], filed November 28, 1997, should be, and hereby is, DENIED.